**MILSTEIN, ADELMAN & KREGER, LLP**
Wayne S. Kreger, State Bar No. 154759
wkreger@maklawyers.com
Sara D. Avila, State Bar No. 263213
savila@maklawyers.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BENAVIDES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> KELLOGG COMPANY, a Delaware Corporation; KELLOGG USA, INC., a Michigan Corporation; KELLOGG SALES COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CV10-02294 JST (PJWx) <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:       October 4, 2010 <br> Time:       10:00 A.M. <br> Courtroom:  TBA |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     SUMMARY OF ALLEGATIONS ...........................................4

III.    DEFENDANTS CANNOT SATISFY THE LEGAL STANDARD .........7

IV.     PLAINTIFF HAS STANDING TO PLEAD HIS CLAIMS......................8

V.      THE COMPLAINT SUFFICIENTLY PLEADS FACTUAL
        CONTENT ENTITLING PLAINTIFF THE REASONABLE
        INFERENCE THAT KELLOGG IS LIABLE..........................................11

        A.    Plaintiff's Claims Under The UCL, FAL and CLRA
              are More Than Adequately Alleged................................................11
              1. Plaintiff Properly Alleged Kellogg's affirmative
                 Misrepresentations And Omissions Are Material..................12

              2. Plaintiff Sufficiently Alleged Reliance ...................................14

              3. Kellogg's Misrepresentations Go Beyond Mere Puffery.......15

        B.    Kellogg's Food Safety Protocols Constitute Unlawful,
              Unfair And Fraudulent Business Practices ......................................17

        C.    Plaintiff Sufficiently Alleged The Facts In Support
              Of His Claims Grounded In Fraud And Negligent
              Misrepresentation..........................................................................18

        D.    Plaintiff's Claims For Breach of Warranty Are
              Adequately Alleged.......................................................................20

VI.     PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS PROPER....21

VII.    CONCLUSION .......................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.* (2d Cir. 1977)
   569 F.2d 181 ..................................................................................................19

*Allied Signal, Inc. v. City of Phoenix* (9th Cir. 1999)
   182 F.3d 692 ....................................................................................................4

*Ashcroft v. Iqbal* (2009)
   129 S. Ct. 1937 ................................................................................................8

*Baggett v. Hewlett-Packard Co.* (C.D. Cal. Sept. 29, 2009)
   2009 WL 3178066 ............................................................................................8

*Barron v. Reich* (9th Cir. 1994)
   13 F.3d 1370 ....................................................................................................7

*Bell Atlantic Corp. v. Twombly* (2007)
   550 U.S. 544 ....................................................................................................7

*Buckland v. Threshold Enters., Ltd.* (Ct. App. 2007)
   155 Cal. App. 4th 798......................................................................................15

*Burr v. Sherwin-Williams Co.* (1954)
   42 Cal.2d 682..................................................................................................20

*Cattie v. Wal Mart Stores, Inc.* (S.D. Cal. 2007)
   504 F. Supp. 2d 939..........................................................................................9

*Clemens v. DaimlerChrysler Corp.* (9th Cir. 2008)
   534 F.3d 1017..................................................................................................11

*Coastal Abstract Serv., v. First Am. Title Ins. Co.* (9th Cir. 1999)
   173 F.3d 725....................................................................................................15

*Collins v. Safeway, Inc.* (1st Dist. 1986)
   187 Cal.App.3d 62...........................................................................................10

*Conley v. Gibson* (1957)
   355 U.S. 41 .......................................................................................................3

*Consumer Advocates v. Echostar Satellite Corp.* (Ct. App. 2003)
   113 Cal.App.4th 1351................................................................................11, 12

*David K. Lindemuth v. Shannon Financial Corp.* (N.D. Cal. 1986)
  637 F.Supp. 991 ........................................................................................3

*Doe v. U.S.* (9th Cir. 2005)
  419 F.3d 1058 ........................................................................................18

*Falk v. Gen. Motors Corp.* (N.D. Cal. 2007)
  496 F. Supp. 2d 1088 ..............................................................................12

*Freeman v. Time, Inc.* (9th Cir. 1995)
  68 F.3d 285 ............................................................................................11

*Fundin v. Chicago Pneumatic Tool Co.* (1984)
  152 Cal.App.3d 951 ................................................................................21

*Gilligan v. Jamco Development Corp.* (9th Cir. 1997)
  108 F.3d 246 ............................................................................................7

*Gottsdanker v. Cutter Laboratories* (Cal. App. 1960)
  182 Cal.App.2d 602 ..................................................................................2

*Hale v. Sharp Healthcare* (Cal. Ct. App. Apr. 19, 2010)
  2010 WL 1529329 ....................................................................................8

*Hall v. City of Santa Barbara* (9th Cir. 1986)
  833 F.2d 1270 ..........................................................................................3

*Haskell v. Time, Inc.* (E.D. Cal. 1994)
  857 F. Supp. 1392 ..................................................................................15

*Hill v. City of Santa Barbara* (9th Cir. 1986)
  833 F.2d 1270 ..........................................................................................7

*Ileto v. Glock, Inc.* (9th Cir. 2003)
  349 F.3d 1191 ..........................................................................................7

*In re Facebook PPC Advertising Litigation* (N.D. Cal. Apr. 22, 2010)
  2010 WL 1746143 ..................................................................................14

*Kearns v. Ford Motor Co.* (2009)
  567 F.3d 1120 ........................................................................................13

*Klein v. Duchess Sandwich Co.* (1939)
  14 Cal.2d 272 ........................................................................................20

*Klein v. Earth Elements, Inc.* (1997)
   59 Cal.App.4th 965 ........................................................................................ 17

*Lavie v. Procter & Gamble Co.* 512 (Ct. App. 2003)
   105 Cal.App.4th 496 ...................................................................................... 11

*Leonhardt* (1st Dist. 2005)
   2005 WL 240428 ............................................................................................ 17

*Lopez v. Smith* (9th Cir. 2000)
   203 F.3d 1122 .................................................................................................. 7

*Lujan v. Defenders of Wildlife* (1992)
   504 U.S. 555 .................................................................................................... 8

*Mazza v. American Honda Motor Corp.* (C.D. Cal. 2008)
   254 F.R.D. 610 ............................................................................................... 11

*MB Financial Group, Inc. v. U.S. Postal Service* (9th Cir. 2008)
   545 F.3d 814 .................................................................................................. 19

*McAfee v. Cargill, Inc.* (SD Cal. 1954)
   121 F.Supp. 5 ................................................................................................. 21

*Mirkin v. Wasserman* (1992)
   5 Cal.4th 1082 ............................................................................................... 12

*Mohamed v. Jeppesen Dataplan, Inc.* (9th Cir. 2009)
   579 F.3d 943 .................................................................................................. 18

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.* (E.D. Cal. 2009)
   29 F.Supp.2d 1135 ......................................................................................... 19

*Navarro v. Block* (9th Cir. 2001)
   250 F.3d 729 .................................................................................................... 7

*Newcal Indus., Inc. v. Ikon Office Solutions* (9th Cir. 2008)
   513 F.3d 1038 ................................................................................................ 15

*Ostreicher v. Alienware, Corp.* (N.D. Cal. 2008)
   544 F. Supp. 2d 964 ....................................................................................... 16

*Pappas Co. v. E. & J. Gallo Winery* (E.D. Cal. 1985)
   610 F. Supp. 662 ............................................................................................ 21

*Pough v. Almager, V.M.* (S.D.Cal. Mar. 4, 2010)
2010 WL 796748 ............................................................................13

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000)
78 Cal.App.4th 847 .......................................................................21

*Shin v. BMW of North America* (C.D. Cal. 2009)
2009 WL 2163509 ..........................................................................14

*Stearns v. Select Comfort Retail Corp.* (N.D. Cal. June 5, 2009)
2009 WL 1635931 ....................................................................15, 19

*Stickrath v. Globalstar, Inc.* (N.D. Cal. 2007)
527 F. Supp. 2d 1992 ....................................................................16

*Toxic Injuries Corporation v. Safety-Kleen Corp.* (C.D. Cal. 1999)
57 F.Supp.2d 947 ..........................................................................10

*Troyk v. Farmers Group, Inc.* (Ct. App. 2009)
171 Cal. App. 4th 1305....................................................................8

*Von Saher v. Norton Simon Museum of Art at Pasadena* (9th Cir. 2009)
578 F.3d 1016 ...............................................................................23

*Williams v. Gerber Prods. Co.* (9th Cir. 2008)
552 F.3d 934 .................................................................................11

STATE CASES

*In re Tobacco II Cases* (2009)
46 Cal. 4th 298................................................................12, 13, 14

*Kasky v. Nike, Inc.* (2002)
27 Cal.4th 939................................................................................11

FEDERAL STATUTES

Fed. R. Civ. P. 8(a).............................................................................3

Fed. R. Civ. P. 8(a)(2).....................................................................7, 19

Fed. R. Civ. Proc. 15(a) ..................................................................23

Plaintiff Anthony Benavides ("Plaintiff"), individually and on behalf of all others similarly situated, submit the following memorandum in opposition to the Motion to Dismiss the First Amended Complaint ("Motion") filed by Defendants Kellogg Company, Kellogg USA, Inc., and Kellogg Sales Company (collectively, "Defendants" or "Kellogg"):

## I.   **INTRODUCTION**

The crux of this case concerns Kellogg's food safety policies, practices and procedures, coupled with Kellogg's simultaneous deliberate decision to mislead and withhold material information from consumers about the quality and safety of those food products. Specifically, since 2007 many of Kellogg's food products contained peanut butter and peanut paste manufactured by Peanut Corporation of America (PCA). Since that time, Kellogg has been representing to the public that these food products were safe to eat. However, in January 2009 Kellogg was forced to recall more than a dozen Kellogg's food products containing peanut butter and peanut paste manufactured by PCA due to a *Salmonella* outbreak. Subsequent federal inspections and investigations have revealed that during the time Kellogg sold food products containing PCA's peanut paste and peanut butter, PCA "failed to manufacture foods under conditions and controls necessary to minimize the potential for growth of microorganisms and contamination."[1] Thus, in putting its name on PCA's product and making represenrations to the public regarding the safety of its food products, Kellogg should have had adequate policies, practices and procedures in place to monitor the safety of the ingredients contained in its products, including peanut butter and peanut paste supplied by PCA before the January 2009 outbreak.

//

[1] *See* paragraphs 19-26 of Plaintiff's First Amended Complaint ("FAC"), attached to the Declaration of Sara D. Avila, Esq. ("Avila Decl.") as Exhibit "1." Unless otherwise noted, paragraph citations ("¶") are to the First Amended Complaint.

1   Defendants have moved to dismiss Plaintiff's First Amended Complaint
2   ("FAC") on the grounds Kellogg's statements regarding the health, quality and safety
3   of their food products were "mere puffery" and their distribution of contaminated and
4   potentially contaminated snack food products was unintentional and thus does not
5   constitute unfair competition, false advertising or violate the Consumer Legal
6   Remedies Act.  However, since the Court must take the allegations in the FAC as true,
7   dismissal is inappropriate here because Kellogg knew, or should have known, of the
8   inadequacy of the inspections of the manufacturer's facilities and its prevalence of
9   *Salmonella* at these facilities.

10   Kellogg's attempt to strike Plaintiffs' request for injunctive relief should be
11   denied because there exists a definitive likelihood of future injury to Plaintiff and
12   members of the putative Class. Kellogg's false and misleading statements and
13   omissions regarding the safety and quality of its food products and manufacturing
14   process, coupled with a gross inadequacy in food safety measures, is not to be viewed
15   in isolation; Kellogg's conduct is not limited to "past conduct."

16   To wit, although it is the January 2009 recall of sixteen (16) products for
17   *Salmonella* contamination which give rise to the instant action, Kellogg's June 25,
18   2010 food recall demonstrates Kellogg's quality control continues to be inadequate.[2]
19   The House of Representatives Committee on Energy and Commerce and its
20   Subcommittee on Oversight and Investigations ("CEC") launched an investigation of
21   this June 2010 recall. In investigating this most recent food recall, on August 2, 2010
22   the Chairman of the CEC, Henry A. Waxman requested that Kellogg provide to the
23   CEC documents regarding Kellogg's "policies and procedures designed to ensure that
24
25

26   [2] On June 25, 2010 Kellogg voluntary recalled select packages of four cereal brands "due to an
     uncharacteristic off-flavor and smell coming from the liner in the package" and "because of possible
27   temporary symptoms, including nausea and diarrhea." A true and correct copy of Kellogg's June 25,
     2010 News Release regarding this recent recall is attached to the Avila Decl. as Exhibit "2."
28

OPPOSITION TO KELLOGG'S MOTION TO DISMISS [CV10-02294 (JST) (pjw)]

its cereal and other food products do not pose a risk to human health[.]"[3]    The documents requested by the CEC, as well as the ongoing investigation and all upcoming hearings by the CEC, are directly relevant to Plaintiff's claims and the instant Motion to Dismiss. Accordingly, **if the Court is inclined to grant Kellogg's instant Motion to Dismiss ("Motion") in any respect, Plaintiff respectfully requests leave to amend his operative complaint to plead additional facts revealed through the CEC's investigation.**

Moreover, Kellogg's argument that Plaintiff failed to plead his claims with particularity also fails. It is well-settled Plaintiff need not produce evidence to support his claims at the pleadings stage; rather, he need only provide "a short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a). Even under the standard set forth in Rule 9(b), requiring averments of fraud to "be stated with particularity," Plaintiff need only plead facts sufficient to "give [Defendant] notice of the specific alleged misconduct to as to enable him to prepare a defense." *David K. Lindemuth v. Shannon Financial Corp.*, 637 F.Supp. 991, 993 (N.D. Cal. 1986). Moreover, pre-discovery motions to dismiss are disfavored. *See Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) (reversing grant of Rule 12(b)(6) motion and observing "[i]t is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"). Indeed, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hall*, 833 F.2d at 1274, fn 9 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In sum, the FAC sufficiently pleads factual content entitling Plaintiff to the reasonable inference Kellogg is liable under California law and Plaintiff and the Class

---

[3] A true and correct copy of the CEC's August 2, 2010 document request is attached to the Avila Decl. as Exhibit "3."

1   are entitled to injunctive relief. The allegations of material omissions and
2   misrepresentations, causation, reliance and injury are sufficiently stated in a very
3   detailed complaint, ensuring Defendants have "fair notice of what the plaintiff's claim
4   is and the grounds upon which it rests." *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d
5   692, 696-97 (9th Cir. 1999). Accordingly, Kellogg should be held responsible for the
6   safety of the ingredients it purchased from a disreputable supplier and subsequently
7   sold to Plaintiff and other consumers. The FAC easily meets the federal pleading
8   standards and Kellogg's motion should be denied.

9

10  **II.    SUMMARY OF ALLEGATIONS**

11        Kellogg is one of the world's leading producers of convenience foods, including
12  cookies, crackers, pastries, cereal bars and other snack foods. ¶ 12. Plaintiff's First
13  Amended Complaint ("FAC") arises out of Defendants Kellogg Company, Kellogg
14  USA, Inc., and Kellogg Sales Company's (collectively "Defendants" or "Kellogg")
15  false and misleading statements and material omissions regarding the quality and
16  safety of Kellogg's food products, Kellogg's inadequate quality-control measures and
17  January 2009 recall of sixteen food products contaminated or potentially contaminated
18  with *Salmonella*. This outbreak is estimated to have been responsible for the deaths of
19  nine people as well as causing 22,500 to fall ill. *Id.* Between January 16, 2009 and
20  February 2, 2009, Kellogg recalled sixteen of its food products as a result of this
21  outbreak. ¶¶ 27-34.

22        The *Salmonella* outbreak was traced to Peanut Corporation of America's
23  ("PCA") plants in Blakely, Georgia and Plainview, Texas. ¶¶ 14, 20, 24. At the time
24  these plants were contaminated with *Salmonella*, Defendants were buying peanut paste
25  manufactured by PCA to use in Defendants' consumer products. ¶¶ 3, 27, 28. The
26  FDA found that PCA's practices and procedures for minimizing the risk to harmful
27  food contamination were markedly deficient, and even revealed that PCA was subject

28

to a criminal investigation arising out of the *Salmonella* outbreak.  ¶¶ 20, 21, 23.  The FDA also found that PCA had found *Salmonella* in its peanut products through its own internal testing twelve times since June 2007, yet, disturbingly, had shipped the products anyway.  ¶ 20.

While Defendants were making false and misleading representations regarding the quality and safety of their food products to their customers, including Plaintiff and the Class, Defendants simultaneously purchased contaminated or potentially contaminated peanut paste from PCA and using that paste in the manufacture of their products.  ¶¶ 1, 3, 5, 48, 63, 89, 104, 128.  Below are some of Kellogg's misrepresentations:

- "Kellogg claims that it is 'committed to providing consumers with a wide choice of quality food products'" (FAC ¶46) (emphasis in FAC);

- Kellogg's Austin Brand has a "commitment to using 'only quality ingredients'" (FAC ¶48);

- "Kellogg states that '[c]onsumers trust the Kellogg name- a trust we have earned by manufacturing our products to strict standards' and additionally promises that it follows 'best practices to produce the safest products for consumers.'" (FAC ¶50);

- "Kellogg further claims that '[a]ll of our suppliers must meet our stringent food-safety requirements" (FAC ¶51); and,

- "Kellogg claims that it requires each of its suppliers to 'maintain a documented quality management process for its factories, agree to follow the Kellogg Code of Conduct for Manufacturers[.];" (FAC ¶52).

These false and misleading statements are capable of deceiving a reasonable consumer, including Plaintiff.  ¶¶ 74.  In addition to these affirmative misrepresentations, Defendants omitted critical information regarding the safety and quality of their products, and Plaintiff relied on these omissions in deciding to purchase the products. ¶¶ 1, 3, 45-53, 64, 71, 105, 129, 130.

Kellogg hired the American Institute of Baking ("AIB") to conduct safety auditing of PCA on Kellogg's behalf, yet AIB had several flaws which made them unfit for such a task: 1) AIB had no expertise relating to peanuts or detection of *Salmonella*; 2) AIB was paid by PCA and sold products to PCA, creating serious conflicts of interest; and 3) AIB had failed to detect *Salmonella* in a previous audit of another manufacturer, which resulted in a major outbreak of *Salmonella* poisoning. ¶3. As a result of their sub-standard quality control measures, Kellogg recalled many of its food products because they were contaminated or potentially contaminated with *Salmonella*. ¶¶ 1, 27-33. Kellogg instructed consumers who bought the recalled products to destroy those products, rather than eating them. ¶¶ 29-32. Several people across the country, including individuals in California, have been sickened by consuming these products ¶ 33.

Kellogg's own food-safety measures were grossly inadequate. ¶¶ 1, 3, 43, 53, 67, 90, 105, 129, 139, 142. The FAC alleges Kellogg's Chief Executive Officer, David Mackay, acknowledged the safety protocols employed by Kellogg were inadequate to prevent its food from being contaminated with *Salmonella*. ¶ 43. Mr. Mackay's position found accord on Capitol Hill as Representative Henry Waxman, Chairman of the Energy and Commerce Committee stated that "Kellogg was sloppy" when referring to the investigation into the *Salmonella* outbreak. *Id.* Kellogg's inadequate quality control is currently being investigated by the House of Representatives Committee on Energy and Commerce. *See* Avila Decl., **Ex. 1**.

Plaintiff purchased Defendants' *Austin*® Quality Foods Toasty Crackers with Peanut Butter and *Austin*® Quality Foods Cheese Crackers with Peanut Butter at a CVS located in Burbank, CA on January 15, 2009. ¶ 74. If Plaintiff had known Kellogg's safety practices were so anemic, and that Defendants' products posed a risk of *Salmonella* infection, Plaintiff would never have purchased the products. *See* ¶ 74. Plaintiff's decision to purchase these products was based on Defendants' systematic

1   and deceptive representations that they were concerned with "product quality" and

2   "food safety," and that the products were "high-quality foods" made with "only quality

3   ingredients." ¶¶ 1, 45-52, 57, 65, 89, 104, 138, 141, 156, 160. Furthermore,

4   Defendants state that "[c]onsumers trust the Kellogg name—a name we have earned

5   by manufacturing our products to strict standards," and we follow the "best practices to

6   produce the safest products for consumers." ¶ 50. As a result of these

7   misrepresentations, Plaintiff lost money by purchasing the products, which constitutes

8   a concrete injury to a legally protected interest.

9

10   ## III.   DEFENDANTS CANNOT SATISFY THE LEGAL STANDARD

11        A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests

12   the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349

13   F.3d 1191, 1199-2000 (9th Cir. 2003). In evaluating Kellogg's motion to dismiss, the

14   allegations in Plaintiff's FAC must be accepted as true and construed in the light most

15   favorable to Plaintiff. *See Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). There is

16   "a powerful presumption against rejecting pleadings for failure to state a claim."

17   *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *see also Hill*

18   *v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). Indeed, dismissal is

19   appropriate only if there is "no cognizable legal theory or an absence of sufficient facts

20   alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th

21   Cir. 2001). Where pleadings are determined to be deficient, leave to amend should be

22   freely granted. *See Lopez v. Smith*, 203 F.3d 1122, 11330 (9th Cir. 2000). As such, if

23   the Court determines Plaintiff's FAC is deficient in any way, Plaintiff respectfully

24   requests leave to amend.

25        A claim for relief must be supported by "a short plain statement showing that

26   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts "do not require

27   heightened fact pleading of specifics, but only enough facts to state a claim to relief

28

1  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
2  (2007). Thus, in order to state a plausible claim, a plaintiff need only "plead[] factual
3  content that allows the court to draw the reasonable inference that the defendant is
4  liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## IV.   PLAINTIFF HAS STANDING TO PLEAD HIS CLAIMS

7          "Injury-in-fact is not Mount Everest... The contours of the injury-in-fact
8  requirement, while not precisely defined, are very generous," requiring only that a
9  plaintiff "allege some specific, 'identifiable trifle' of injury." *Hale v. Sharp
10 Healthcare*, 2010 WL 1529329, at *5 (Cal. Ct. App. Apr. 19, 2010). To this end, "[a]n
11 injury to a tangible property interest, such as money, generally satisfies the 'injury in
12 fact' element of standing." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305,
13 1346 (Ct. App. 2009). Furthermore, on a motion to dismiss, "general factual
14 allegations of injury resulting from defendant's conduct may suffice." *Lujan v.
15 Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

16         Here, Plaintiff alleged a concrete injury to a legally protected interest. As set
17 forth in his FAC, Plaintiff spent money on the purchase of Kellogg's *Austin®* Quality
18 Foods Toasty Crackers with Peanut Butter and *Austin®* Quality Foods Cheese
19 Crackers with Peanut Butter "[a]s a result of Kellogg's deceptive marketing scheme
20 and his reasonable beliefin [sic] the purported healthiness, nutrition and safety of its
21 Products." ¶¶ 74.   Plaintiff, in purchasing Kellogg's products, also relied upon
22 Kellogg's omissions with regard to Defendant's inadequate quality control practices.
23 ¶¶ 1, 3, 45-53, 64, 71, 105, 129, 139.

24         Allegations of expenditure of money on the Products in reliance upon Kellogg's
25 material affirmative misrepresentations (and omissions) satisfies the pleading
26 requirements for "injury in fact" under Article III as well as the UCL, FAL and CLRA.
27 *See Baggett v. Hewlett-Packard Co.*, No. SACV 07-0667 AG (RNBx), 2009 WL

28

3178066, at *3 (C.D. Cal. Sept. 29, 2009) (explaining that a plaintiff suffers "injury in fact" for purposes of standing under the UCL when she has "expended money due to the defendant's acts of unfair competition"); *Cattie v. Wal Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentation in connection with a sale to plead and prove he relied on a material misrepresentation.").

Here, Plaintiff clearly alleges, in purchasing Kellogg's peanut butter crackers, he received "something other than what was represented, a product he did not seek" since the food product was contaminated or potentially contaminated. ¶ 74. The FAC goes on to say "Products that were contaminated or potentially contaminated with *Salmonella*." ¶ 100. Moreover, Defendants "urged consumers who bought the recalled Products to destroy" the Products. ¶¶29-32. Plaintiff further alleges "there have been numerous reports of *Salmonella* poisoning caused by the consumption of Kellogg's Austin® brand Products. According to these reports, people have been sickened by consuming these Products in a number of states across the country, including California[.]" ¶ 33. Plaintiff alleges he would not have purchased the Products had he known they were contaminated or potentially contaminated. ¶¶70, 107 147, 154, 158, 162.

Kellogg also contends the allegations in Plaintiff's FAC are conclusory because Plaintiff did not plead particular facts. (Def. Brf. at 11:22-25). ***Yet Defendants instructed Plaintiff and the Class not to eat the products because they may have been contaminated with Salmonella.*** ¶¶ 29-32; Def. Motion at 4:6-7. This uncontested fact alone defeats Kellogg's standing arguments that: (i) Plaintiff "consumed the product and became ill" (Def. Motion at 11:25); (ii) "he incurred medical monitoring expenses or other out of pocket costs as a result of consuming the product" (Def. Brf. at 11:25-27); (iii) he "discarded the product after learning of the recall" (Def. Brf. at 11:27-28:1) and (iv) "the particular product that he purchased was contaminated with

Salmonella" Def. Brf. at 12:1-3.[4] Not one of these arguments overcome Plaintiff's claims that he spent money to purchase a food product that was not fit for consumption and Defendants instructed consumers to destroy the products. A food item that cannot be eaten without the risk of *Salmonella* poisoning is certainly worthless.

Finally, *Collins v. Safeway, Inc.*, 187 Cal.App.3d 62, is distinguishable from the case at hand. In *Collins,* a plaintiff brought suit against egg farmers for the sale and distribution of contaminated eggs. *Collins v. Safeway, Inc.*, 187 Cal.App.3d 62 (1st Dist. 1986). There, it was determined that not all eggs had been contaminated and even the contaminated eggs did not necessarily cause illness when ingested. *Collins*, 187 Cal. App.3d at 69, 74.  Here, the FAC alleges the *Salmonella* that ravaged the PCA's factory (including those purchased by Plaintiff) killed nine people and sickened an estimated 22, 500 others. ¶¶ 1, 12.  This allegation in Plaintiff's FAC is also sufficient to distinguish the instant action from *Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F.Supp.2d 947, where a defendant allegedly exposed individuals "to vapors, aerosols, and particles" that only *may* have included "toxic and carcinogen chemicals[.]" *Toxic Injuries Corp.*, 57 F.Supp.2d at 953. Here, Plaintiff's FAC alleges a concrete and identifiable link between Kellogg's conduct, *Salmonella* contamination of the Products and physical illness, a link Kellogg has not denied and cannot deny. ¶¶1-2, 11, 14-33, 66-73.

//
//
//
//
//

---

[4] Unless otherwise noted, all references to "Def. Brf. at __" are to pages in the Notice of Motion and Motion and Memorandum in Support of Defendants' Motion to Dismiss, Dkt. # 17.

1  **V.  THE COMPLAINT SUFFICIENTLY PLEADS FACTUAL CONTENT**

2  **ENTITLING PLAINTIFF THE REASONABLE INFERENCE THAT**

3  **KELLOGG IS LIABLE**

4  **A.  Plaintiff's Claims Under The UCL, FAL and CLRA Are More Than**

5  **Adequately Alleged**

6  Plaintiff's claims under the UCL, FAL and CLRA are more than adequately

7  alleged. Indeed, the FAC pleads three consumer protection statutes: the California

8  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; the False

9  Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and the

10  California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

11  Claims of deceptive advertising under the UCL, FAL, and CLRA are governed

12  by a "reasonable consumer" test. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th

13  Cir. 1995); *see also Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 512 (Ct.

14  App. 2003) ("[T]he standard applied in UCL and false advertising cases is that of the

15  ordinary consumer acting reasonably under the circumstances."); *Consumer Advocates*

16  *v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360 (Ct. App. 2003) (applying

17  same standard to CLRA claims). Under the reasonable person standard, Plaintiff must

18  simply show "members of the public are likely to be deceived." *Freeman*, 68 F.3d at

19  289; *see also Mazza v. American Honda Motor Corp.*, 254 F.R.D. 610, 626 (C.D. Cal.

20  2008).

21  The UCL, FAL and CLRA prohibit "not only advertising which is false, but also

22  advertising which[,] although true, is either actually misleading or which has a

23  capacity, likelihood or tendency to deceive or confuse the pubic." *Williams v. Gerber*

24  *Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th

25  939, 951 (2002)). Where, as here, deception by omission is also alleged, the concealed

26  fact must be material in the sense that it is likely to deceive a reasonable consumer. *See*

27  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008). Put another

28

way, in order to be deceived, members of the public must have had an expectation or an assumption about the matter in question. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-96 (N.D. Cal. 2007). Plaintiff's FAC sufficiently alleges every element of the UCL, FAL and CLRA claims.

### (1)   Plaintiff Properly Alleged Kellogg's Affirmative Misrepresentations And Omissions Are Material

"A misrepresentation is judged to be 'material' if 'a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360 (Ct. App. 2003) (explaining that, for CLRA claims, materiality is judged by the effect on a "reasonable consumer"). Similarly, in order for non-disclosed information to be material, a plaintiff must show "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (1992).

The materiality of Kellogg's omissions and misrepresentations is alleged with a great deal of clarity in the FAC. Defendants knew making statements regarding the quality and safety of their snack products containing peanut ingredients or produced on the same lines as such products was false and misleading. Defendants continuously and systematically represented themselves to be concerned with "product quality" and "food safety," as Defendants represented the Products were "high-quality foods" made with "only quality ingredients." (FAC ¶ 1). *Defendants went even further to say all of their suppliers met "stringent food safety requirements," including those based on Codex Alimentarius Commission standards.* ¶¶ 1-2. Moreover, Defendants state that "[c]onsumers trust the Kellogg name – a name we have earned by manufacturing our products to strict standards" and additionally promising to follow "best practices to produce the safest products for consumers." (FAC ¶ 50). Had Kellogg disclosed its

1   inadequate safety and quality-control standards, Plaintiff would have certainly acted
2   differently: he would not have purchased Kellogg's Products. ¶¶ 70, 107 147, 154,
3   158, 162.

4          The instant action is distinguished from *Kearns v. Ford Motor Co.*, 567 F.3d
5   1120. There, the class representative "failed to allege the particular circumstances
6   surrounding such representations." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126
7   (2009). The plaintiff in *Kearns* also failed to "specify what the television
8   advertisements and other sales material stated." *Id.* Here, Plaintiff plainly alleges he
9   purchased Products at a CVS located in Burbank, California on January 15, 2009
10  "because he had been exposed to the promotion, advertising and marketing of
11  Kellogg's Products" as described in detail. ¶ 74. Further, Plaintiff's FAC clearly sets
12  forth Kellogg's misrepresentations and omissions and the context of each
13  misrepresentation. *See* ¶¶ 1, 3, 45-53. It is well established California law that where a
14  class representative alleges exposure to a long-term advertising campaign, he "is not
15  required to plead with an unreasonable degree of specificity that the plaintiff relied on
16  particular statements or advertisements." *Tobacco II,* 46 Cal. 4th at 328.

17         Furthermore, "materiality is generally a question of fact [to be decided by a
18  jury] unless the "fact misrepresented is so obviously unimportant that the jury could
19  not reasonably find that a reasonable man would have been influenced by it." *Tobacco*
20  *II,* 46 Cal. 4th at 427. Plaintiff's claims demonstrate the importance of Kellogg's
21  omissions and misrepresentations not only to Plaintiff, but also to the consuming
22  public at large. At a bare minimum, Plaintiff's allegations create an issue of fact not
23  properly decided on a motion to dismiss for failure to state a claim. *See Pough v.*
24  *Almager, V.M.*, No. 08CV1498 JM(RBB), 2010 WL 796748, at *8 (S.D.Cal. Mar. 4,
25  2010).

26  //

27  //

28

1

### (2)   Plaintiff Sufficiently Alleged Reliance

Plaintiff may demonstrate reliance by demonstrating that " 'in all reasonable probability' he would not have engaged in the injury-producing conduct" (i.e. purchasing the potentially *Salmonella*-contaminated Products) absent the misrepresentations and omissions. *See In re Facebook PPC Advertising Litigation*, No. 509CV03043JF, 2010 WL 1746143, at *6 (N.D. Cal. Apr. 22, 2010) (quoting *Tobacco II*, 46 Cal. 4th at 326). Similarly, Plaintiff has pled his throughout his FAC. *See* ¶¶70, 107 147, 154, 158, 162. Kellogg's practices were likely to deceive a consumer acting reasonably in the same circumstances because of the material fraudulent omissions and misrepresentations made by Kellogg in regard to the safety of its contaminated Products. Further, Kellogg made misleading statements by making offers or promises Kellogg did not keep and could not plausibly keep, based on the material fraudulent omissions and misrepresentations discussed throughout the FAC. To this end, it is sufficient that Plaintiff alleges he relied on Kellogg to provide "high-quality foods" using "only quality ingredients" through "using best practices to produce the safest products for consumers." ¶¶ 45-53.

Moreover, Defendants completely ignore the fact the FAC lists numerous fraudulent *omissions* regarding the safety of the Products, which Plaintiff alleges he relied upon in purchasing the Products. ¶¶ 53-56, 64, 71, 105, 129, 139. "For purposes of pleading a fraudulent omissions claim under the UCL and CLRA, a plaintiff satisfies the 'as a result of' [reliance] requirement by pleading that he would have behaved differently if he had been aware of the information and the undisclosed information would have been important to reasonable consumers." *Shin v. BMW of North America,* No. CV0900398AHM(AJWz), 2009 WL 2163509 at *3 (C.D. Cal. 2009). "[A]ctual reliance for the purpose of fraud by omission occurs when the Plaintiff reposes confidence in the *material completeness* of the Kellogg's misrepresentations, and acts upon this confidence." *Buckland v. Threshold Enters.,*

*Ltd.*, 155 Cal. App. 4th 798, 808 (Ct. App. 2007) (emphasis in original). Yet this is exactly what the FAC alleges. Had Plaintiff known of the inadequacy of the third party auditing firm and the fact the manufacturer of the Products' facilities were rife with *Salmonella*, Plaintiff would not have purchased the Products. FAC ¶¶ 70, 107, 147, 154, 158, 162.

Thus, when Plaintiff's allegations are taken as a whole (rather than in the self-serving piecemeal manner presented by Kellogg), facts in support of reliance on Kellogg's omissions and misrepresentations are sufficiently alleged. For purposes of the UCL, FAL and CLRA, Plaintiff's FAC states sufficient facts to create a reasonable inference that Plaintiff relied on Kellogg's fraudulent omissions and misrepresentations in deciding to purchase the Products.

### (3)   Kellogg's Misrepresentations Go Beyond Mere Puffery

"The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (quoting *Haskell v. Time, Inc.* 857 F. Supp. 1392 (E.D. Cal. 1994)). In determining whether a statement is puffery, courts "inquire whether a reasonable consumer would consider the statement to be true." *Id.* As Defendants note, to be actionable, the misrepresentation must be "a statement capable of being proved false." *Coastal Abstract Serv., v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Plaintiff's FAC clearly pleads Kellogg misled consumers by misrepresenting its commitment to the quality and safety of the Products, including, among other things:

- "Kellogg claims that it is 'committed to providing consumers with a wide choice of quality food products'" (FAC ¶ 46) (emphasis in FAC);

- Kellogg's Austin Brand has a "commitment to using 'only quality ingredients'" (FAC ¶ 48);

- "Kellogg states that '[c]onsumers trust the Kellogg name- a trust we have earned by manufacturing our products to strict standards' and additionally promises that it follows 'best practices to produce the safest products for consumers.'" (FAC ¶ 50);

- "Kellogg further claims that '[a]ll of our suppliers must meet our stringent food-safety requirements" (FAC ¶ 51); and,

- "Kellogg claims that it requires each of its suppliers to 'maintain a documented quality management process for its factories, agree to follow the Kellogg Code of Conduct for Manufacturers[.];" (FAC ¶ 52).

Plaintiff's FAC clearly alleges that these statements did prove to be false and misleading, and capable of deceiving a reasonable consumer. ¶¶ 53-73. Defendants did in fact formulate, design, manufacture, advertise, promote, distribute and/or sell Products while simultaneously maintaining inadequate health and safety measures. Moreover, Defendants omitted critical information regarding the safety and quality of their Products. ¶¶ 1, 3, 45-53, 64, 71, 105, 129, 139.

A key difference between the statements made in the cases cited by Kellogg and the allegations made in the FAC are that these alleged "puffery statements by Kellogg actually relate to safety of food products. *A "safety consideration is integral" to a court's "finding that non-disclosed information was material." See also Ostreicher v. Alienware, Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008) (emphasis added) (recognizing an "obligated to disclose" exception where a complaint alleges safety concerns). Applied to the instant matter, false representations of the safety of ingredients and manufacturing process of food are actionable, especially when Kellogg knew or had reason to know there were concerns in health and safety control at its peanut ingredient supplier's facilities. For example, in *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 1992, statements that a satellite television service provides "CD quality" or "high quality" reception were found to be unactionable puffery. Statements

made about a television service differ from the statements in the instant action because the safety of a food item directly affects a consumer's health and welfare.

Finally, Kellogg's statements regarding the safety of the Products' ingredients and suppliers are capable of being proved false. The FAC alleges Kellogg's CEO, David Mackay, "acknowledged that the safety protocols employed by Kellogg and others in the food industry were inadequate to prevent food from being contaminated with *Salmonella* and needed to be improved[.]" ¶43.

**B.    Kellogg's Food Safety Protocols Constitute Unlawful, Unfair And Fraudulent Business Practices**

Defendants incorrectly argue the UCL, FAL and CLRA do not apply because, according to Defendants, "the accidental distribution of contaminated food does not constitute unfair, fraudulent, or unlawful conduct." (Def. Brf. at 7:19-20). Defendants ignore Plaintiff's allegations concerning Kellogg's inadequate health and safety procedures regarding the manufacturer of the Products. ¶¶ 1, 3, 5, 48, 63, 89, 104, 128. Unlike the defendant pet food distributor in *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965 (1997), the instant complaint alleges Kellogg made numerous statements about the quality and safety of the Products while *simultaneously* failing to ensure adequate quality-control and safety measures were in place. ¶¶ 1, 3, 5, 48, 63, 89, 104, 128.

Likewise, Kellogg's reliance on *Leonhardt*, 2005 WL 240428, is unavailing. There, the Court of Appeals affirmed a defendant's summary judgment where the defendant unintentionally distributed an outdated arbitration agreement but never enforced the agreement against any member of the Class. *Leonhardt*, 2005 WL 240428, *6 (1st Dist. 2005) (unpublished) (citing *Klein*, 59 Cal. App. 4th 965). First, the arbitration agreement in *Leonhardt* was never enforced by any member of the class, whereas here, consumers of Kellogg's food products containing ingredients manufactured by PCA actually sickened and injured by the January 2009 *Salmonella*

1   outbreak. ¶¶ 43. Second, Plaintiff's claims, as explained above, are not premised on an
2   "isolated unintentional act." ***The incident was not an isolated because Kellogg***
3   ***continuously and systematically utilized PCA's ingredients in its products and made***
4   ***statements about the safety of those ingredients for nearly two years without the***
5   ***proper health and safety precautions.*** For these reasons, as clearly and
6   unambiguously pled in Plaintiff's FAC, Kellogg's lack of adequate food safety
7   policies, practices and procedures, coupled with Kellogg's false and misleading
8   statements and omissions regarding the safety of the Products, do not amount to an
9   unintentional and isolated event wherein there is no cognizable legal theory upon
10  which relief to Plaintiff and the Class may be granted.

**C.    Plaintiff Sufficiently Alleged The Facts In Support Of His Claims Grounded In Fraud And Negligent Misrepresentation**

13       Plaintiff's misrepresentation claims should not be dismissed.  First, Kellogg
14  once again argues Plaintiff's claims are based on puffery. (Def. Brf. at 23:23-24). As
15  set forth above, these arguments fail because, as alleged throughout the FAC, the
16  statements upon which Plaintiff predicates his claims are material, and were made in
17  conjunction with Defendants' inadequate health and safety standards.

18       Second, Plaintiff's claims are plead with sufficient particularity, including
19  Kellogg's intent and knowledge.  At this stage in the litigation, a court will "construe
20  the complaint in the light most favorable to the plaintiff[s], taking all [their] allegations
21  as true and drawing all reasonable inferences from the complaint in [their] favor."
22  *Mohamed v. Jeppesen Dataplan, Inc.,* 579 F.3d 943, 949 (9th Cir. 2009) (citing *Doe v.*
23  *U.S.,* 419 F.3d 1058, 1062 (9th Cir. 2005)) (reversing dismissal). As detailed above
24  and throughout the FAC, Plaintiff sufficiently alleges facts sufficient to support the
25  inference Kellogg had knowledge that the "manufacturing process quality-control
26  measures were flawed" and that Kellogg intended to defraud consumers. *See* ¶¶ 43.

27
28

Moreover, whether Kellogg had knowledge of these quality and safety problems at PCA is an issue of material fact, and cannot be decided at this stage in the litigation.

Third, Kellogg's argument that it "provided consumers with the opportunity for a fall [sic] refund" is unavailing. In *Stearns*, 2009 WL 1635931, the defendant offered the plaintiff a full refund *after* she complained about mold growth on a bed sold and distributed by the defendant, and the plaintiff took the refund. *Stearns v. Select Comfort Retail Corp., et al.*, 2009 WL 1635931, * 9 (N.D. Cal. 2009). The Court found this offer of a refund was merely a "standard business practice" and there were "no allegations that Defendants asked any of the named Plaintiffs to return their beds." *Id.* In contrast, after the PCA outbreak became public, ***Kellogg instructed Plaintiff and the Class to destroy all affected and potentially affected Products and subsequently offered refunds***. Also, Kellogg does not contend refunds for its food products are standard business practices.

Fourth, Kellogg wrongfully argues the economic loss doctrine applies here. Def. Brf. at 19:27-20:9; 21:9-12. The cases cited by Defendants are not instructive. In *Multifamily Captive Group, LLC*, 629 F.Supp.2d 1135, the Court determined whether the economic loss doctrine applied in a motion for summary judgment, not in a motion to dismiss. *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*, 629 F.Supp.2d 1135, 1146. The distinction is important because, unlike *Multifamily*, discovery has not commenced in the instant action. Moreover, Plaintiff is "entitled to plead alternative or multiple theories of recovery on the basis of the same conduct on the part of the defendant." *MB Financial Group, Inc. v. U.S. Postal Service*, 545 F.3d 814, 819 (9th Cir. 2008) (reversing dismissal and holding that "[n]egligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract") (citing *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 185 (2d Cir. 1977); *see also* Fed. R. Civ. P. 8(d)(2).

1   Finally, Kellogg argues Plaintiff's fraudulent concealment claim fails because
2   Kellogg did not have a legal duty to disclose its manufacturing quality-control
3   measures were flawed. (Def. Brf. at 21:23-24). Defendants cite no published authority
4   supporting this position. Further, *Lesinksy*, 2007 WL 1544500, is unpersuasive, since
5   *Lesinksy* is a breach of contract case involving the sale of real property at summary
6   judgment, and bears no resemblance to the case at hand.

7   **D.   Plaintiff's Claims For Breach of Warranty Are Adequately Alleged**

8   As set forth above, Plaintiff's claims are not based on puffery. Kellogg's
9   statements, as detailed in the FAC and above, can properly form the basis for claims of
10   breach of warranty. Similarly, Kellogg's argument that Plaintiff's warranty claims
11   must be dismissed for failure to allege the actual products purchased by Plaintiff
12   contained *Salmonella* fail for the same reasons set forth above: Kellogg instructed
13   Plaintiff and the Class to destroy the products. ¶¶ 18, 28; Def. Brf. at 4:5-7.
14   Defendants' contention that Plaintiff can not state a claim for breach of warranty
15   because Plaintiff lacks privity with Kellogg is also without merit.  Privity is generally
16   required between the buyer and seller in order for the buyer to maintain a claim for
17   breach of warranty.   *Burr v. Sherwin-Williams Co.*, 42 Cal.2d 682, 695 (1954).
18   However, this rule is subject to many exceptions, two of which are applicable in the
19   instant case.

20   In the case of claims for breach of both implied and express warranties, there is
21   no privity requirement when the good at issue is a foodstuff. *Gottsdanker v. Cutter*
22   *Laboratories*, 182 Cal.App.2d 602, 606 (Cal. App. 1960) (stating that the main public
23   policy behind this exception is ensuring that only wholesome food is sold to the
24   public).  Kellogg acknowledges this exception, yet they argue that it only applies in
25   cases where the Plaintiff sustained a physical injury. (Def. Brf. at 23: 3-8).  In support
26   of this argument Defendants rely on *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272
27   (1939).   However, *Klein* does not expressly limit the application of the foodstuff

28

exception to cases where the Plaintiff was physically injured. *Id.* Furthermore, later cases applying *Klein* applied the foodstuff exception to situations where the plaintiff did not suffer physical injury. *See, e.g., McAfee v. Cargill, Inc.*, 121 F.Supp. 5, 5-6 (finding the foodstuff exception applicable in situation where plaintiff's dogs were sickened by contaminated dog food); *see also Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 871 (2000) (economic losses resulting from defective foodstuffs can be recovered even where the parties are not in privity).

Second, in cases where "a consumer relies on representations made by a manufacturer in labels or advertising material, recovery is allowable on the theory of express warranty without a showing of privity." *Fundin v. Chicago Pneumatic Tool Co.,* 152 Cal.App.3d 951, 957 (1984). Here, Plaintiff relied on Kellogg's labels and advertising material in making the decision to purchase the products, and therefore his express warranty claim is not barred by the fact that he lacks privity with Defendants. Thus, the lack of privity between Plaintiff and Defendants does not preclude Plaintiff's breach of warranty claims, because exceptions to the privity requirement apply to Plaintiff's breach of implied and express warranty claims. Finally, Kellogg offers no authority supporting its argument that its offer of a full refund defeats Plaintiff's warranty claims. For these reasons, Plaintiff's warranty claims should not be dismissed.

## VI.  **PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS PROPER**

Injunctive relief is available for violations of the UCL, FAL and CLRA. Cal. Bus. & Prof. C. §§ 17204, 1735; Cal. Bus. Prof. C. § 1780(a)(1). "[A] plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur[.]" *Pappas Co. v. E. & J. Gallo Winery*, 610 F. Supp. 662, 672 (E.D. Cal. 1985).

1    Kellogg attempts to recast Plaintiff's FAC as being predicated on an "isolated
2    incident that was caused by a now-bankrupt third party[.]" (Def. Brf. at 24:6-8). This is
3    erroneous. While Plaintiff's FAC is in fact based on the *Salmonella* outbreak at the
4    PAC facilities that manufactured ingredients for Kellogg's Products, the Complaint
5    alleges, in clear terms, that this action arises out of: (i) Kellogg's misrepresentation of
6    the Products as healthy, nutritious, made with only quality ingredients as safe; (ii)
7    Kellogg's failure to warn of and/or disclose or adequately disclose the material fact
8    that these Products were manufactured using processes and quality-control measures
9    that were grossly inadequate for purposes of ensuring that its Products would not be
10   contaminated with *Salmonella.* ¶1. The FAC alleges Kellogg acknowledged its
11   inadequate safety standards. ¶43.

12   These are not, contrary to Kellogg's argument, isolated events, and there exists a
13   definitive likelihood of future injury to Plaintiff and members of the putative Class
14   because Defendants' conduct with regard to the safety of its food products is not
15   limited to "past conduct." To wit, as recent as June 25, 2010 Defendants recalled 28
16   million boxes of its most popular cereal products due to contamination by the toxic
17   chemical 2-methylnaphthalene. *See* Avila Decl., Exhibits 2 and 3. Also, Kellogg's
18   food safety policies, procedures and practices are currently being investigated by the
19   House of Representatives Committee on Energy and Commerce and its Subcommittee
20   on Oversight and Investigations. *Id.*   Accordingly, Plaintiff's request for injunctive
21   relief should not be stricken.

22   //
23   //
24   //
25   //
26   //
27   //
28

# VII.   **CONCLUSION**

For the foregoing reasons, Kellogg's Motion to Dismiss should be denied.[5]

Dated: September 13, 2010                          Respectfully Submitted,

                                         MILSTEIN, ADELMAN & KREGER, LLP

                                         /s/ Sara D. Avila
                                         Sara D. Avila
                                         savila@maklawyers.com
                                         2800 Donald Douglas Loop North
                                         Santa Monica, California 90405
                                         Telephone: (310) 396-9600
                                         Facsimile:  (310) 396-9635

---

[5] In the alternative, if the Court grants Kellogg's Motion in any respect, Plaintiff respectfully requests the Court grant him leave to amend his FAC to cure any deficiencies and/or to plead additional facts revealed through the CEC's investigation. *See* Fed. R. Civ. Proc. 15(a) ("The court should freely give leave when justice so requires."); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1031 (9th Cir. 2009) ("Unless it is clear that the complaint cannot be saved by amendment, dismissal without prejudice and without leave to amend is not appropriate.").

1

2 <u>**CERTIFICATE OF SERVICE**</u>

3       I hereby certify that I have this 13th day of September 2010, served via the Court's

4 electronic filing system, a true and correct copy of the above and foregoing on counsel as follows:

5

6 Andrew F Merrick       amerrick@jenner.com

7 Wayne S Kreger       wkreger@maklawyers.com

8 Dean N Panos       dpanos@jenner.com

9 Richard P Steinken       rsteinken@jenner.com

10 Kenneth Kiyul Lee       klee@jenner.com

11

12                                             /s/ David Marin

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28