**MILSTEIN ADELMAN, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@milsteinadelman.com
Sara D. Avila, State Bar No. 263213
savila@milsteinadelman.com
Michael I. Miller, State Bar No.
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BENAVIDES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>KELLOGG COMPANY, a Delaware Corporation; KELLOGG USA, INC., a Michigan Corporation; KELLOGG SALES COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV10-02294 JST (PJWx)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date:          August 30, 2011<br>Time:          10:00 A.M.<br>Courtroom:  10A (Santa Ana) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 30, 2011 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Josephine Staton Tucker, United States District Court Judge, in the United States District Court for the Central District of California, located at 411 West Fourth Street, Room 10A, Santa Ana, California 92701, Plaintiff Anthony Benavides ("Plaintiff"), on behalf of himself and the proposed class, will and hereby does move for class certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). This Motion is based on this

Notice of Motion and Motion and Memorandum in Support of Plaintiff's Motion for Class Certification, and is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 18, 2011.


DATED: June 20, 2011                    Respectfully submitted,


Attorneys for Plaintiff Anthony Benavides

/s/ Sara D. Avila
MILSTEIN, ADELMAN & KREGER LLP
Gillian L. Wade
Sara D. Avila
2800 Donald Douglas Loop North
Santa Monica, CA 90405

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................1

II.    SUMMARY OF ALLEGATIONS.................................................2

       A.    The Recall Of Kellogg's Contamination Of Snack Products .........2

       B.    Kellogg's Ongoing Inadequate Safety And Quality Control...........3

       C.    Plaintiff's Purchase Of Potentially Contaminated Products ...........5

III.   PROPOSED CLASS DEFINITION..................................................6

IV.   ARGUMENT............................................................................6

       A.    This Action Satisfies All Four Requirements Of Rule 23(a)...........7

           1.  Defendants Agree the Class is Sufficiently Numerous............7

           2.  Commonality Is Established Because This Case Is Comprised Of Uniform Misrepresentations And Omissions Giving Rise To Common Questions Subject to Common Proof.................8

           3.  Typicality Is Established Because Plaintiff's Claims Are Based On The Same Conduct And The Same Injury As The Class .................................................................9

           4.  The Proposed Class Representative Will Fairly and Adequately Protect Class Interests ...........................................10

               a.  Neither the Class Representative Nor His Counsel Have Any Conflict Of Interest With The Proposed Class.......11

               b.  The Class Representative Will Prosecute This Action Vigorously ...................................................11

               c.  Counsel Are Qualified, Experienced And Have The Resources To Vigorously Prosecute This Action..........12

       B.    The Court Should Certify A Rule 23(b) Class...............................13

           1.  Common Issues Predominate Over Individual Issues............13

               a.  Individual reliance Is Irrelevant To The Inquiry On Plaintiff's UCL and CLRA Claims ................................15

b. Plaintiff's Implied Warranty and Merchantability Claim Is Well-Suited For Class Treatment ...............................17

2. A Class Action Is the Superior Method Of Adjudication ......17

V. CONCLUSION .........................................................................19

# <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL CASES</u>

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997)..................................................................6, 13, 18

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) .....................................................6, 7

*Crawford v. Honig*
    37 F.3d 485 (9th Cir. 1994) ........................................................10

*Dukes v. Wal-Mart, Inc.*
    Supreme Court Case No. 10-277, Slip Opinion at 9 (June 20, 2011). ......8, 12

*Eisen v. Carlise & Jacquelin*
    417 U.S. 156 (1974)....................................................................6

*Gen. Tel. Co. of Southwest of Falcon*
    457 U.S. 147 (1982).................................................................10, 11

*Haley v. Medtronic, Inc.*
    169 F.R.D. 643 (C.D. Cal. 1996)..................................................12

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ..................... 7, 8, 9, 10, 13, 14, 18

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) ....................................................7, 9

*In re Abbott Laboratories Norvir Antitrust Litig.*
    2007 WL 168999 (N.D.Cal. June 11, 2007)....................................15

*In re Mego.Fin.Corp.Sec.Litig.*
    213 F.3d 454 (9th Cir. 2000) ......................................................7

*Jimenez v. Domino's Pizza, Inc.*
    238 F.R.D. 241 (C.D.Cal. 2006)..................................................11

*Jordan v. County of Los Angeles*
    669 F.2d 1311 (9th Cir. 1982) ....................................................8

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) .................................................10, 11

*Medrano v. WCG Holdings, Inc.*
    2007 WL 4592113 (C.D.Cal. Oct. 15, 2007) ...................................7

*Moeller v. Taco Bell Corp.*
    220 F.R.D. 604 (N.D. Cal. 2004) ................................................12

*Negrete v. Allianz Life Ins. Co. of N. Am.*
    238 F.R.D. 482 (C.D.Cal.2006).............................................13, 16

*O'Connor v. Boeing North American, Inc.*
    184 F.R.D. 311 (C.D.CA. 1998).................................................................6

*Phillips v. Accredited Home Lenders Holding Co.*
    2007 U.S. Dist. LEXIS 59880 (C.D.Cal. May 16, 2007)................................9

*Reynoso v. South County Concepts*
    2007 WL 4592119 (C.D.Cal. Oct. 15, 2007) ...........................................7, 17

*Sollenbarger v. Mountain Sttes Tel. & Tel. Co.*
    121 F.R.D. 417 (D.N.M. 1988) ...............................................................6

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ...................................................................9

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................................13, 17

*Yamamoto v. Omiya*
    564 F.2d 1319 (9th Cir. 1977) ...............................................................7

*Zinser v. Accufix Research Inst.*
    253 F.3d 1180 (9th Cir. 2001) ...............................................................7, 13

STATE CASES

*American Suzuki Motor Corp. v. Superior Court*
    37 Cal.App. 4th 1291 (1996) ..................................................................17

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) ........................................................................15, 16

*Isip v. Mercedes-Benz USA, LLC*
    155 Cal.App. 4th 19 (2007) ....................................................................17

*Mass. Mutual Life Ins. Co. v. Superior Court*
    97 Cal.App.4th 1282 (Cal. App. 4th Dist. 2002)..........................................16

*McAdams v. Monier, Inc.*
    182 Cal.App.4th 174 (Cal. App. 2010) .....................................................15

FEDERAL STATUTES

Fed. R. Civ. P. 23(a).................................................................................7

Fed.R.Civ.P. 23(a)(1)...............................................................................7

Fed.R.Civ.P. 23(a)(3)...............................................................................9

Fed.R.Civ.P. 23(a)(4)...............................................................................10

Fed.R.Civ.P. Rule 23(b)(3) ...................................................................13, 17

Fed.R.Civ.P. Rule 23(b)(3)(A) ..................................................................18

Fed.R.Civ.P. Rule 23(b)(3)(B) ................................................................18

Fed.R.Civ.P. Rule 23(b)(3)(D) ..............................................................19

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................12

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................12

<u>OTHER SOURCES</u>

Advisory Committee on Rule 23,
Proposed Amendments to the Rules of Civil Procedure,
    39 F.R.D. 69 (1966) .....................................................................6

*Newberg on Class Actions* (3d ed. 1992)
    §7.24 ...........................................................................................11

Schwarzer, Tashima & Wagstaffe (The Rutter Group 1998)
    *Cal.Prac. Guide: Fed.Civ.Pro.Before Trial* § 10:250 .....................6

Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d*
    § 1754 .........................................................................................6

Plaintiff Anthony Benavides ("Plaintiff"), individually and on behalf of all others similarly situated, submits the following memorandum in opposition to the Motion to Dismiss the Second Amended Complaint ("Motion") filed by Defendants Kellogg Company, Kellogg USA, Inc., and Kellogg Sales Company (collectively, "Defendants" or "Kellogg"):

## I.    **INTRODUCTION**

This case is about what Kellogg knew, when they knew it, and what they did about it. Its about Kellogg's decision to knowingly conceal important information regarding the safety of its food products using peanut ingredients supplied by Peanut Corporation of America ("PCA"). Specifically, Kellogg failed to maintain adequate safety and quality control measures, causing the January 2009 recall of more than a dozen of Kellogg's food products for contamination or potential contamination of the potentially deadly *Salmonella* bacteria.  That Kellogg's food products were recalled is not surprising, given the number of adverse event reports at PCA's facilities during the time period in which Kellogg used PCA products. Kellogg chose to turn a blind eye to these negative reports and continued to make uniform and universal omissions about its food products, including the implied warranty they were safe to eat.[1]

*Why* Defendants misled the public is evident: to maintain and protect their market share and profits. They knew that informed consumers would not roll the dice on their health. The materiality of Defendants' omissions is demonstrated by the fatal consequences many consumers suffered.  Given that studies by the FDA revealed that PCA's facilities had been ravaged by *Salmonella* numerous times during the time

---

[1] Plaintiff is informed and believes that Kellogg possesses or controls documents that evidence this information. However, because Kellogg contends this information is confidential and proprietary, Defendants requested that parties stipulate to a Protective Order. The Protective Order was filed on June 3, 2011 (Dkt. 65). Kellogg refuses to produce such documents until and unless the Protective Order is granted. *See* Avila Declaration (filed concurrently), at ¶¶4-6. Plaintiff anticipates the Court will enter the Protective Order (Dkt. 65) and Kellogg will produce responsive documents before Plaintiff files his brief in Reply to Kellogg's opposition.

Kellogg utilized PCA's peanut products, full disclosure would have had a devastating impact on Kellogg's bottom line.

Defendants' aim was to engage in a broad, uniform and pervasive scheme to hide the truth about their food products, about the ingredients used to manufacture them, and the safety hazards posed to consumers. It is this willful, deceptive conduct that Plaintiff and the Class to redress. Indeed, what is at issue in this case, in addition to whether Kellogg failed to properly prevent its products from being produced with unsafe ingredients, is whether conduct by Kellogg was adequate under California law to protect consumers once Kellogg recalled the food products. [2]

In sum, whether Defendants are liable to consumers for the payment price of the contaminated food products is a question that can be determined once as to all affected consumers. Likewise, whether an injunction should be imposed on Kellogg is an issue that should be determined on a classwide basis.

## II.   <u>SUMMARY OF ALLEGATIONS</u>

### A.   The Recall of Kellogg's Contaminated Snack Products

Plaintiff's complaint arises out of Kellogg's inadequate safety and quality-control measures, which led to Kellogg's recall of sixteen food products ("Products")[3] between January 2009 and February 2, 2009 for *Salmonella* contamination of the peanut-based ingredients contained in the food Products. ¶¶28-34. Kellogg instructed Plaintiff and the Class to destroy the Products and not to eat the food Products because they were contaminated or potentially contaminated with *Salmonella*. ¶¶ 29-32; dkt. 62

---

[2] Kellogg continues to produce food products in contaminated food manufacturing plants. For example, as recent as June 7, 2011 the Food and Drug Administration ("FDA") issued a Warning Letter about a persistent strain of *Listeria* monocytogenes in Kellogg's cookie plant. *See* Avila Decl. at ¶10, **Ex. 1**. In the Warning Letter, the FDA writes that the presence of the *Listeria* bacteria "is significant in that it demonstrates that [Kellogg's] cleaning and sanitation efforts were inadequate[.]" *Id.* No recall was announced by Kellogg.

[3] The sixteen recalled Products are listed in ¶ 30 of the COMPLAINT and are collectively referred to as the "Products" or the "food products."

at 5:12-15, 18:4-24, and 29:1-6. This *Salmonella* outbreak caused for the deaths of nine people as well as causing 22,500 to fall ill.  *Id.*  The *Salmonella* outbreak was traced to Kellogg's peanut ingredient provider, Peanut Corporation of America's ("PCA"), which has plants in Blakely, Georgia and Plainview, Texas.  ¶¶15, 21, 25. Kellogg acknowledged that it purchased peanut product from PCA' Blakely, Georgia facility beginning in July 2007.  Avila Dec. ¶ 3, Ex. 1 (Kellogg's Response to Special Interrogatory No. 2); Dkt. 62. At 10:22 to 11:3.

### B.   Kellogg's Ongoing Inadequate Safety and Quality Control

Kellogg's recently-retired Chief Executive Officer, David Mackay, acknowledged that the safety protocols employed by Kellogg were inadequate to prevent its food Products from being contaminated with *Salmonella*.  ¶ 43.  Since July 2007, PCA supplied peanut butter and peanut paste to Kellogg that Kellogg in turn used as ingredients for the Products. ¶13. An investigation by the United States Food and Drug Administration ("FDA") revealed PCA's own microbiological testing found the presence of *Salmonella* in PCA products at least twelve (12) times since June 2007. ¶21.   Kellogg acknowledged that it did not use any person or entity to conduct audits on peanut-based ingredients between July 1, 2008 and January 16, 2009.  Avila Dec. ¶ 3, Ex. 1 (Kellogg's Response to Special Interrogatories 4 and 5).  Thus, at the time Kellogg was using peanut paste manufactured by PCA in its food products, including *Austin*® and *Keebler*® brand sandwich crackers, the PCA  plants were ravaged by *Salmonella* about a dozen times.  ¶¶ 4, 28, 29.  Had Kellogg adequately researched PCA and inspected its facilities, it would have known, among other things, that the PCA facilities: failed to store conditions that would protect against microbial contamination (which is a cause of *Salmonella*); failed to conduct cleaning and sanitizing operations for utensils and equipment; and, had not taken effective measures to protect against food contamination by pests. ¶22. Plaintiff's allegations are clear: either Kellogg did not have the proper safety and quality control mechanisms in place

to know its peanut-based ingredients were being manufactured in a facility contaminated with *Salmonella*, or Kellogg knew and did nothing.  Either is inapposite to Kellogg's representation on its website that "all of our suppliers must meet our stringent food safety requirements.  Dkt. 62 at 23:10-13.

Indeed, rather than using its own auditors, like other food manufacturers such as Nestlé, which examined and rejected the very PCA plants Kellogg utilized, Kellogg hired the American Institute of Baking ("AIB") to conduct safety auditing of PCA on Kellogg's behalf. ¶44. The Second Amended Complaint ("Complaint") alleges AIB had several flaws which made them unfit for such a task: 1) AIB had no expertise relating to peanuts or detection of *Salmonella*; 2) PCA paid AIB and purchased products and educational materials from AIB, creating serious conflicts of interest; and 3) AIB failed to detect *Salmonella* in a previous audit of another manufacturer, which resulted in a major outbreak of *Salmonella* poisoning.  ¶5, 46.  Plaintiff's allegations are supported by the March 6, 2009 article written by Michael Moss and Andrew Martin entitled "Food Problems Elude Private Inspectors," wherein *The New York Times* reported on Kellogg's practice of hiring unqualified private inspectors to audit its suppliers' manufacturing plants to ensure that the plants conformed to safety and health standards.  ¶35. As alleged in the COMPLAINT, the AIB's inspection of PCA's Blakely, Georgia plant for Kellogg was wholly inadequate. ¶¶ 35-40.  The AIB audited PCA's plant only after soliciting PCA's business. ¶ 38.   Although PCA had advance notice that AIB would be inspecting the plant, PCA only gave AIB less than one day to inspect the plant. ¶ 39.  Although AIB checked to see that PCA had a system in place to test its products for contamination, AIB never asked to see any test results, which would have revealed that PCA found *Salmonella* on numerous occasions. ¶41; *see also* ¶¶ 4, 28, 29.

The FDA found that PCA's practices and procedures for minimizing the risk to harmful food contamination were markedly deficient, and even revealed that PCA was

subject to a criminal investigation arising out of the *Salmonella* outbreak.  ¶¶ 20, 21, 22, 23.

### C.   Plaintiff's Purchase of Potentially Contaminated Products

Plaintiff purchased Defendants' *Austin*® Quality Foods Toasty Crackers with Peanut Butter and *Austin*® Quality Foods Cheese Crackers with Peanut Butter at a CVS located in Burbank, CA on January 15, 2009.   ¶¶8, 66.   Plaintiff paid approximately $2.00 for each of the Kellogg snacks. *Id.* Plaintiff purchased these snacks for their intended purpose – to be eaten. *Id.* Indeed, as Plaintiff had been consuming these snacks since childhood, a substantial factor in his decision to purchase the snacks was Kellogg's reputation and safety of Kellogg's food products. *Id.*

Plaintiff learned about the recall from a news article on the website Yahoo. ¶68. After Plaintiff learned of Kellogg's recall, he followed Kellogg's instructions and discarded the crackers, which were Products included in the recall. ¶¶8, 68.  Kellogg admitted the Products were not fit for its intended purpose – consumption – because it instructed consumers, including Plaintiff, not to eat the Products. ¶69. As a result of Kellogg's conduct (i.e. inadequate quality and safety standards leading up to the recall), Plaintiff was economically injured and lost money or property. ¶¶69-70. That is, Plaintiff paid money for snack food manufactured by Kellogg that was not fit for its intended purpose, and was in fact a substantial health risk. ¶¶ 2, 11, 58.

Before bringing this motion and consistent with Local Rule 7-3, on May 18, 2011, counsel for Plaintiff met and conferred with counsel for Kellogg regarding the substance of this motion.  Avila Decl., at ¶ 3.

Moreover, procedurally, Plaintiff is informed and believes Kellogg possesses numerous documents supporting the instant Motion for Class Certification. Kellogg refuses to produce those documents unless and until the Court signs the Protective Order regarding those responsive documents. The Protective Order was filed June 3,

2011 (Dkt. 65). Plaintiff reserves the right to present such documents to the Court as evidence in support of this Motion at the time Plaintiff files a brief in reply to Defendants' anticipated Opposition to the instant Motion.

### III.   <u>PROPOSED CLASS DEFINITION</u>

Plaintiff seeks to certify a class consisting of: "All persons residing in the State of California who purchased  a food product that was subject to January and February 2009 recall for contamination or potential contamination." Excluded from the Class are any individuals who have settled personal injury claims  arising out of the *Salmonella* outbreak with Kellogg. Also excluded from the Class are any employees of Kellogg and any individuals receiving remuneration from Kellogg.

### IV.   <u>ARGUMENT</u>

The dual purposes of Rule 23 are:  "(1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights."  *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 318 (C.D.Ca. 1998) (granting class certification) (citing Wright, Miller & Kane § 1754 at 49; Schwarzer, Tashima & Wagstaffe, *Cal.Prac. Guide: Fed.Civ.Pro.Before Trial* § 10:250 (The Rutter Group 1998)); *see also Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 175 (1974); *Sollenbarger v. Mountain Sttes Tel. & Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M. 1988).  "[F]raud perpetrated on numerous persons by the use of similar misrepresentations" is particularly suited for a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws") *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) (quoting Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966)), *cert denied*, 429 U.S. 816 (1976).

Given the purposes of the class action device, district courts have "broad discretion" to determine whether the Rule 23 requirements are met. *Zinser,* 253 F.3d at 1186; *In re Mego.Fin.Corp.Sec.Litig.*, 213 F.3d 454, 461 (9th Cir. 2000); *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). Further, the Rule 23(a) requirements are permissive. *See e.g. Reynoso v. South County Concepts*, 2007 WL 4592119, *3 (C.D.Cal. Oct. 15, 2007); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113, *3 (C.D.Cal. Oct. 15, 2007). Thus, a trial court is only required to form a reasonable judgment. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975). In this regard, "[t]he court is bound to take the substantive allegations of the complaint as true." *Id.* This proposed class action squarely meets the criteria of Rule 23(a)of the Federal Rules of Civil Procedure and is maintainable under Rule 23(b)(3).

### A.    This Action Satisfies All Four Requirements of Rule 23(a)

Commonly referred to as the numerosity, commonality, typicality and adequacy requirements, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), under Fed. R. Civ. P. 23(a), a district court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Plaintiff bears the burden of demonstrating "each of the four requirements of Rule 23(a) *and* at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (italics added).

### 1.   <u>Defendants Agree the Class is Sufficiently Numerous</u>

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed.R.Civ.P. 23(a)(1)). The exact size of the class need not be

known as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated* on other grounds, 459 U.S. 810 (1982). Here, Kellogg recalled thirty products sold to millions of consumers and provided refunds to at least 10 consumers.[4] Therefore, the Class is sufficiently numerous.

## 2. <u>Commonality Is Established Because This Case Is Comprised Of Uniform Misrepresentations And Omissions Giving Rise To Common Questions Subject To Common Proof</u>

Under Rule 23(a)(2), there must be questions of law or fact common to the proposed class. Courts have described the showing needed to meet the commonality requirement as "minimal" and "not high." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In assessing commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019. Additionally, The common contention "must be of such nature that it is capable of classwide resolution- which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart, Inc.*, Supreme Court Case No. 10-277, Slip Opinion at 9 (June 20, 2011).

Here, since this case is based on uniform misrepresentations by Kellogg that its food products were safe to eat, Kellogg's omissions that its food products were not safe to eat, and the subsequent recall of those products for contamination or possible

---

[4] Although Kellogg has in its possession, custody or control documents supporting a finding that millions of products were sold and that Kellogg issued refunds to consumers as a result of the outbreak, Kellogg refuses to produce those documents unless and until the Court enters the proposed Protective Order signed by parties and filed with the Court on June 3, 2011 (Dkt. 65). Accordingly, Plaintiff anticipates that the Court will sign the proposed Protective Order and Defendants will produce responsive documents before the deadline for Plaintiff to file his Reply brief, and Plaintiff will attach those documents in support of his Reply brief.

contamination by *Salmonella,* the common contentions (e.g. what Kellogg knew about the safety and cleanliness of its ingredients) need only be determined once. It is indisputable that the claims of all class members "stem from the same source." *See Hanlon*, 150 F.3d at 1019-20. That source is Kellogg's failure to adequately monitor the health and safety of its ingredient manufacturers, subsequent contamination of Kellogg's food products and the early 2009 recall. Thus, this action can be pared down to a few common issues that can easily be resolved according to class-wide proof:

> **<u>Issue 1:</u>**  Did Kellogg imply its food products were safe to eat?

> **<u>Issue 2:</u>** At the time Kellogg impliedly warranted its food products were safe to eat, did Kellogg have policies, practices and procedures to adequately ensure the safety of the ingredients contained in those food products?

> **<u>Issue 3</u>**: At the time Kellogg implied its food products were safe to eat were they in fact not safe to eat because they were contaminated or potentially contaminated with *Salmonella*?

> **<u>Issue 4:</u>**  Should Kellogg provide restitution to California consumers?

Based on these four issues, it cannot be disputed there is a common core of salient facts and legal issues. *See Hanlon,* 150 F.3d at 1019; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Phillips v. Accredited Home Lenders Holding Co.*, 2007 U.S. Dist. LEXIS 59880 (C.D.Cal. May 16, 2007) (commonality satisfied where claims arose from "the same solicitations"). Thus, the Rule 23(a)(2) commonality requirement is easily satisfied.

### 3.  <u>Typicality Is Established Because Plaintiff's Claims Are Based On The Same Conduct And The Same Injury As The Class</u>

Third, "[t]he typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon,* 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(3)).  "The test of typicality is whether other members have the same or similar injury, whether the action

is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 140 F.3d at 1020; *see also Gen. Tel. Co. of Southwest of Falcon*, 457 U.S. 147, 157 (1982).

Here, Plaintiff's claims are identical to the claims of the proposed Class. Plaintiff purchased Kellogg's food products for the purpose of eating them, and in reliance on the implied warranty that they were indeed safe to eat. *See* Complaint at ¶ 3. Plaintiff's claims pose the same questions of law and fact as the class members and arise from the same conduct: Kellogg's failure to implement policies, procedures and practices to adequately monitor and maintain the quality and health of the ingredients Kellogg used in its food products and the subsequent *Salmonella* contamination and instruction to destroy said food products. *Id.* at ¶ 5-8, 67, 72, 83, 114, 115, 120. Plaintiff suffered the same injury – the loss of purchase price – and seeks restitution on behalf of all Class members. Accordingly, Plaintiff is well-suited to represent the Class.

### 4. <u>The Proposed Class Representative Will Fairly and Adequately Protect Class Interests</u>

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed.R.Civ.P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id. See also Lerwill v. Inflight Motion*

*Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon,* 150 F.3d at 1021; *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

### a)  Neither the Class Representative Nor His Counsel Have Any Conflict Of Interest With The Proposed Class

The class representative may not have interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Because adequacy is closely related to typicality, where, as here, the claims of the class members and the class representative are reasonably co-extensive, there is no conflict.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Moreover, if there are any doubts as to the adequacy of representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration. *Newberg on Class Actions* §7.24 at 7-90 to 7-81 (3d ed. 1992). Here, both Plaintiff's claims and the Class' claims arise from Kellogg's uniform and standardized conduct.  There are no real or anticipated conflicts between Plaintiff and the proposed members of the Class. Further, Plaintiff seeks to recover the same remedies as all other members of the proposed Class: return of purchase price and an injunction requiring Kellogg to adequately monitor the health and safety of the ingredients used in its food products.

### b)  The Class Representative Will Prosecute This Action Vigorously

The general rule is that an adequate class representative needs only to have personal experience with the claims of the lawsuit and a general familiarity with the facts, but not necessarily a clear recollection of all facts relevant to their claims. *See e.g., Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D.Cal. 2006).

Here, Plaintiff has personal experience with the claims of the lawsuit and is familiar with the underlying facts.  Plaintiff purchased Kellogg's snack products based on Kellogg's implied warranty that its products were made with quality ingredients

and were safe to eat.  Complaint at ¶ 1, 3, 58, 154, 165.  After purchasing these snack products, Plaintiff learned the products were subject to a recall. Complaint. ¶7 .   As Kellogg instructed, Plaintiff destroyed the Kellogg food products that he had just spent money on. Complaint at ¶ 29.  Plaintiff has demonstrated his ability to monitor class counsel and assure vigorous prosecution of the case. Accordingly, Plaintiff is more than adequate to serve as the Class representative.  *See, e.g. Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("It is not necessary that a class representative be intimately familiar with every factual and legal issue in the case; rather it is enough that the representative understand the gravamen of the claim").

### c)  Counsel Are Qualified, Experienced And Have The Resources To Vigorously Prosecute This Action

When the court certifies a class, the court must also appoint class counsel unless a specific statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). The basic requirement for appointment as class counsel is that such counsel must fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B). In considering the requirement that "Plaintiffs are represented by qualified and competent counsel[,]" *Dukes*, 474 F.3d at 1233, "the Court will look to the professional qualifications, skills, experience and resources of the lawyers." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996).

The proposed class representative has retained experienced, competent legal counsel to represent her and the Class.  *See* Avila Decl., ¶7.  To date Milstein, Adelman, LLP has vigorously litigated this matter, including, but not limited to, defeating Kellogg's motion to dismiss and subsequent motion for reconsideration and propounding discovery requests. Moreover, Milstein Adelman has significant experience litigating class actions and has been appointed class counsel in numerous cases. *Id.* at ¶¶8-9. Based on their performance to date and their commitment to this

1     litigation, Milstein Adelman, LLP will continue to fairly and adequately represent the
2     proposed Class.

3           **B.**      **The Court Should Certify A Rule 23(b)(3) Class**

4           In addition to meeting the prerequisites of Rule 23(a), this action also satisfies
5     Rule 23(b)(3) for all of Plaintiff's claims. Class certification pursuant to Rule 23(b)(3)
6     requires "the questions of law or fact common to the members of the class predominate
7     over any questions affecting only individual members of the class, and that a class
8     action is superior to other available methods for the fair and efficient adjudication of
9     the controversy." Fed.R.Civ.P. Rule 23(b)(3). "Certification under Rule 23(b)(3) is
10    proper 'whenever the actual interests of the parties can be served best by settling their
11    differences in a single action." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D.
12    482, 489 (C.D.Cal.2006) (quoting *Hanlon*, 150 F.3d. at 1022).

13            **1.**      **Common Issues Predominate Over Individual Issues**

14          "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes
15    are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,*
16    *Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a
17    significant aspect of the case and they can be resolved for all members of the class in a
18    single adjudication, there is a clear justification for handling the dispute on a
19    representative rather than individual basis." *Hanlon*, 150 F.3d at 1022.  The Court rests
20    its examination on the legal or factual questions of the individual class members. *Id.*
21    Central to this inquiry is "the notion that the adjudication of common issues will help
22    achieve judicial economy." *Zinser*, 253 F.3d at 1189 (*quoting Valentino v. Carter-*
23    *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The policy at the very core of the
24    class action mechanism is to overcome the problem that small recoveries do not
25    provide the incentive for any individual to bring a solo action prosecuting his or her
26    rights." *Amchem Prods., Inc.*, 521 U.S. at 617.

27

28

Here, common questions of fact and law predominate over any alleged idiosyncratic differences between proposed class members. Common factual issues predominate because all of Plaintiff's breach of implied warranty, UCL and CLRA claims are based on the identical false representations that Kellogg made– that its food products were safe to eat.   Plaintiff's claims are also based in Kellogg's material omission that Kellogg was not in fact implementing policies, procedures and practices to adequately ensure the health and safety of its food products. Moreover, Plaintiff's claims arise out of Kellogg's January-February 2009 recalls which stem from  those omissions and representations. *See e.g. Hanlon v. Chrysler Corp.,* 140 F.3d 1011, 1022 (9th Cir. 1998).

As discussed above regarding "commonality," the factual questions posed by this case are simple: (1) Whether Kellogg implied its food products were safe to eat; (2) At the time Kellogg impliedly warranted its food products were safe to eat, whether Kellogg had policies, practices and procedures to adequately ensure the safety of the ingredients contained in those food products;  (3) At the time Kellogg implied its food products were safe to eat whether they in fact were not safe to eat because they were contaminated or potentially contaminated with *Salmonella*; and, (4) Whether Kellogg should provide restitution to California consumers. These are all common issues that can easily be proven on a classwide basis.

Moreover, unlike most putative consumer fraud class actions that are based on an array of oral and written representations, this case is much simpler because it deals with a uniform, misrepresentation made to every single class member: Kellogg's food products were safe for human consumption. It also deals with the material omission regarding Kellogg's lack of adequate health and safety policies, procedures and practices. There are few, if any, significant individualized factual issues posed here.

//

//

### a) Individual Reliance Is Irrelevant To The Inquiry On Plaintiff's UCL and CLRA Claims

The purpose of the UCL is to deter unfair business practices and "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." McAdams v. Monier, Inc., 182 Cal.App.4th 174, 187 (Cal. App. 2010). It is well-settled that "claims brought under the California Unfair Competition Law are commonly certified for class treatment." In re Abbott Laboratories Norvir Antitrust Litig., 2007 WL 168999, *8 (N.D.Cal. June 11, 2007)(finding that alleged conduct subject to common proof presented common questions of fact and law that class action was superior method of adjudication of UCL claim).

Only the named plaintiff in a UCL class action need demonstrate injury, causation and reliance. *In re Tobacco II Cases*, 46 Cal.4th 298 (2009). The California Supreme Court has noted that the class representative must show the misrepresentation was "an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentations be the sole or even the predominant or decisive factor influencing his conduct." *Id.* Instead, "[i]t is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. *Id.*

Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* A misrepresentation is "material" where "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* at 326. *Plascencia*, 2009 WL 2560732 (N.D. Cal., August 21, 2009) (holding putative class members need

not establish reliance).  "Common issues will thus predominate on UCL claims…as *Tobacco II* sets out a liberal approach to the reliance inquiry." *Id.*

Here, Kellogg's representations that its food products were safe to eat and material omissions that the food products were indeed manufactured without any policies, practices or procedures to adequately ensure the health and safety of the food products were a substantial cause in Plaintiff's decision to purchase the Kellogg food products.

Where such claims are "predicated on identical allegations," and "common, standardized sales materials," courts in the Central District of California have held that "[c]ommon issues regarding [defendants] fraudulent scheme predominate over questions affecting only individual members of the subclass." *Negrete*, 238 F.R.D. at 495-96 (certifying California UCL class action). Although a class representative must allege an injury in fact and reliance, there is no requirement that all absent class members must do the same. *See In re Tobacco Cases*, 46 Cal.4th 298.

The inference of reliance also applies to CLRA claims. *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (Cal. App. 4th Dist. 2002). The CLRA's "causation" requirement requires a showing of reliance by the Class, but "plaintiffs may satisfy their burden of 'showing causation as to each [class member] by showing materiality as to all.'" *McAdams*, 182 Cal.App.4th at 183 (reversing trial court's order dying plaintiff's motion for class certification). An inference of reliance is made on an objective "reasonable person" standard, and is appropriate when a defendant omits facts that would have been material to any reasonable person contemplating the purchase of the defendant's product. *Id.*  at 184.

There is an inference of reliance in the present case because Plaintiff alleges Kellogg made a single, material misrepresentation to each class member: its food products are safe for human consumption. The "reasonable person" standard is surely satisfied. Plaintiff may thus prove with generalized evidence that Kellogg's conduct

was "material" and "likely to deceive" members of the public.  *Plascencia*, 2009 WL 2560732 at *10. Consumers were actually deceived by Kellogg's material omissions, as described above.  It is clear Plaintiff suffered the same material deception as experienced by the proposed Class and appropriately seeks an injunction on behalf of all Class members.  Thus, Plaintiff is typical and well-suited to represent the Class.

### b) Plaintiff's Implied Warranty of Merchantability Claim Is Well-Suited For Class Treatment

An implied warranty of merchantability "arises by operation of law" and "provides for a minimum level of quality." *Isip v. Mercedes-Benz USA, LLC,* 155 Cal.App. 4th 19, 26 (2007) (quoting *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App. 4th 1291, 1295-96 (1996)). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip,* 155 Cal.App.4th at 26. The focus of Plaintiff's breach of implied warranty claim is whether Kellogg's food products were fit for the ordinary purpose for which the food products are used. The trier of fact, in determining whether Kellogg in fact breached the implied warranty of its food products, will consider whether food products manufactured using PCA ingredients, or on the same lines as PCA ingredients, were "in a safe condition and substantially free of defects." *Isip,* 155 Cal.App.4th at 27. This question can be determined once as to all members of the Class. Accordingly, common issues necessary to adjudicate Plaintiff's breach of implied warranty claim predominate.

### 2.  A Class Action Is The Superior Method Of Adjudication

Finally, a class action must be "superior to other available methods for the fair and efficient adjudication of a controversy." Fed.R.Civ.P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts*, 2007 WL 452119, *4 (C.D.Cal. Oct. 14, 2007) (quotations omitted). In addition, a class action is superior where, as here, "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*,

97 F.3d at 1234. Regarding the question of superiority, Rule 23(b)(3) enumerates four nonexclusive factors. Each of the factors supports class certification here.

The first factor to be considered is "the interest of members of the class in individually controlling the prosecution…of separate actions". Fed. R. Civ. P. 23(b)(3)(A). The interest of each class member is minimal. The primary policy of the class action mechanism is to enable the collective vindication of the rights of numerous persons whose small claims may not be worth pursuing in individual actions. *See Amchem Prods., Inc.*, 521 U.S. at 617. Here, while the aggregate damages of the class members may be large, each class member paid a few dollars for their purchase of the contaminated or potentially contaminated food products. *See Hanlon,* 150 F.3d at 1023. Moreover, given that this action involves a threat to public health, the interests of the Class as a whole certainly outweigh any interest in individual damages.

The second factor, "the extent and nature of any litigation concerning the controversy already commenced by…members of the class" also supports proceeding with certification in this action. Fed.R.Civ.P.23(b)(3)(B). To date, no other consumer protection actions regarding the *Salmonella* outbreak and product recall have been filed on behalf of California consumers. Because the Class consists solely of California purchasers of the Products, the third factor, "the desirability…of concentrating the litigation of the claims in a particular forum" is also satisfied. Moreover, Kellogg continues to produce food products in contaminated food manufacturing plants. For example, as recent as June 7, 2011 the Food and Drug Administration ("FDA") issued a Warning Letter about a persistent strain of *Listeria* monocytogenes in Kellogg's cookie plant. *See* Avila Decl. at ¶10, **Ex. 1**. In the Warning Letter, the FDA writes that the presence of the *Listeria* bacteria "is significant in that it demonstrates that [Kellogg's] cleaning and sanitation efforts were inadequate[.]" *Id.* The FDA also notes that its testing "are indicators of insanitary conditions in [Kellogg's] facility and

demonstrate a failure of cleaning and sanitation operations that may allow for contamination of foods with filth or pathogens." *Id.*

Finally, courts consider "the difficulties likely to be encountered in the management of the litigation." Fed.R.Civ.P. 23(b)(3)(D). There are no manageability issues in the instant action. Prosecution of the claims of the putative members of each Class in a single class action will not create more management problems than the alternative (i.e. the prosecution of thousands of separate lawsuits by each member of the Class). Given the number and importance of the common questions of law and fact described above, resolving these issues in one class action is manageable and would further the twin goals of judicial efficiency and procedural fairness.

## V. CONCLUSION

For the reasons stated herein, Plaintiff, on behalf of himself and the proposed class, respectfully requests that the Court issue an order granting this motion for class certification and: (1) certify a Rule 23(b)(2) Class; (2) certify a Rule 23(b)(3) Class; (3) appoint Plaintiff Anthony Benavides as class representative; and, (4) appoint Milstein Adelman, LLC as class counsel pursuant to Fed.R. Civ.P. 23(g).

DATED: June 20, 2011                Respectfully submitted,

                                    Attorneys for Plaintiff Anthony Benavides

                                    /s/ Sara D. Avila
                                    MILSTEIN ADELMAN, LLP
                                    Gillian L. Wade
                                    Sara D. Avila
                                    2800 Donald Douglas Loop North
                                    Santa Monica, CA 90405